IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
UNITED STATES OF AMERICA        *
                                *
v.                              *       Criminal No. WMN-11-512
                                *       Civil Action No. WMN-14-1409
JOSEPH BASSETT                  *
                                *
    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *
```

**MEMORANDUM**

Defendant Joseph Bassett pled guilty to possession of a firearm by a convicted felon and was sentenced by Judge William Quarles as an armed career criminal to the mandatory minimum sentence of fifteen years as prescribed by 18 U.S.C. § 924(e). Defendant appealed his sentence and the United States Court of Appeals for the Fourth Circuit affirmed the judgment of the district court in an unpublished opinion.  United States v. Joseph Bassett, 517 Fed. App'x 164 (4th Cir. Apr. 4, 2013), cert. denied, 134 S. Ct. 238 (2013).  Defendant has now filed a Motion under § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, raising two grounds for relief. ECF No. 60.[1]  First, Defendant claims he received ineffective assistance of counsel in violation of the Sixth Amendment of the United States Constitution.  Second, Defendant asserts that he is no longer an armed career criminal in light of the Supreme Court's decision in Descamps v. United States, 133 S. Ct. 2276

---

[1] All citations to the docket refer to Defendant's criminal case.

(2013).  The Government responded to Defendant's motion, ECF No.
68, and Defendant subsequently filed a reply.  ECF No. 69.  Upon
review of the pleadings and the applicable case law, the Court
finds Defendant's claims are without merit; therefore, his
motion will be dismissed without a hearing.[2]

## 1.  Ineffective Assistance of Counsel

Defendant claims he received ineffective assistance from
trial counsel at his Rule 11 hearing and sentencing hearing, and
additionally, that his appellate counsel was ineffective for
failing to raise issues regarding those hearings on direct
appeal.  To obtain relief under § 2255 based on ineffective
assistance of counsel, a Defendant has the burden of
demonstrating (1) that he received ineffective assistance of
counsel, and (2) that he was prejudiced by that ineffective
assistance.  Strickland v. Washington, 466 U.S. 668, 687 (1984).
To satisfy the first prong, a defendant must prove that his
attorney's conduct violated the Sixth Amendment by falling below
the reasonable standard of conduct expected of attorneys.  See
id., (finding petitioner must show that his counsel's

---

[2] Defendant filed a Motion for Appointment of Counsel on the same
day as his § 2255 motion.  ECF No. 61.  There is no
constitutional right to habeas counsel.  United States v.
Williamson, 706 F.3d 405, 416 (4th Cir. 2013).  When a court
chooses not to conduct an evidentiary hearing in a habeas
proceeding, it appoints counsel in its discretion when "the
interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B).
Because Defendant's claims are legally deficient, his Motion for
Appointment of Counsel will be denied.

performance was not "within the range of competence demanded of
attorneys in criminal cases").   There is a strong presumption
that counsel's conduct was within the wide range of reasonable
professional assistance.   Id. at 689.   To satisfy the second
prong of Strickland, a defendant must demonstrate that there
exists "a reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."   United States v. Fugit, 703 F.3d 248, 259 (4th
Cir. 2012) (quoting Strickland, 466 U.S. at 687-688).   A
defendant who advances an ineffective assistance of counsel
claim following the entry of a guilty plea has a higher burden;
"[s]uch a defendant 'must show that there is a reasonable
probability that, but for counsel's errors, he would not have
pleaded guilty and would have insisted on going to trial.'"
Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988) (quoting
Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

**A.   Rule 11 Hearing**

Rule 11 prohibits a trial court from accepting a plea of
guilty without first determining that the defendant understands
the consequences of his plea.   Defendant claims he received
ineffective assistance of counsel because his trial attorney
failed to object to and his appellate attorney failed to raise
issues concerning the Court's violation of Federal Rules of
Criminal Procedure 11(b)(1)(A), 11(b)(1)(H), and 11(b)(1)(I) at

his Rule 11 hearing.[3]  The Government asserts "that any challenge
to the [Defendant's] guilty plea on the theory that it was
unknowing or involuntary, or an appeal on that basis, would have
been futile."  ECF No. 68 at 5.  The Court agrees.

i. Failure to Comply with Rule 11(b)(1)(A)

At the Rule 11 hearing, Defendant was placed under oath but
was not informed of the Government's right to use against him
any statement made under oath in a prosecution for perjury or
false statement.  ECF No. 60 at 9-10.  Pursuant to Rule
11(b)(1)(A),

> (1) Before the court accepts a plea of guilty or nolo
> contendere, the defendant may be placed under oath,
> and the court must address the defendant personally in
> open court.  During this address, the court must
> inform the defendant of, and determine that the
> defendant understands, the following:
>
> (A) the government's right, in a prosecution for
> perjury or false statement, to use against the
> defendant any statement that the defendant gives under
> oath.

Defendant asserts that because he was not properly placed under
oath, he should be given the opportunity to plead anew.  ECF No.
60 at 11.  The Fourth Circuit rejected a claim virtually
identical to Defendant's in United States v. White, 572 F.2d
1007 (4th Cir. 1978).  In White, the defendant claimed her
guilty plea was rendered invalid and involuntary because she was

---

[3] Unless otherwise noted, all references to rules hereafter refer
to the Federal Rules of Criminal Procedure.

4

not sworn and interrogated under oath as required by Rule

11(c)(5), the predecessor of Rule 11(b)(1)(A).  Id. at 1008.

The Fourth Circuit found that the question before the court was

not simply whether the perjury advisory component of Rule 11 was

observed, but rather, whether the defendant "suffered prejudice

of constitutional magnitude as a result of non-observance of the

rule."  Id. at 1009.

     The Fourth Circuit held that the defendant was not entitled

to relief under § 2255 as a result of the district court's

failure to comply with Rule 11(c)(5);

> [i]t would be difficult enough to posit a case in
> which a defendant who otherwise concluded to plead
> guilty would be encouraged or discouraged to tender
> his plea by lack of knowledge that he may be
> interrogated under oath under penalty of perjury by
> the district court.  Such knowledge, or the lack
> thereof, simply does not go to the voluntariness of
> the plea.

Id.  In so finding, the court noted that the legislative history

of the perjury advisory establishes that "[f]airness, not

voluntariness, is the concept underlying Rule 11(c)(5)."  Id. at

1009 n.4.  Because the defendant was never interrogated under

oath, the court found that the voluntariness of her plea could

not be "affected by knowledge of what might, but did not,

happen."  Id. at 1009.  This Court agrees that when no

subsequent perjury prosecution takes place, the failure to

advise a defendant under Rule 11(b)(1)(A) has no effect on that

defendant's rights. <u>See</u>, <u>e.g.</u>, <u>United States v. Smith</u>, 204 Fed. App'x 298, 299 (4th Cir. 2006)(finding the district court's failure to inform defendant that any false statement could be used against him in a prosecution for perjury did not affect his substantial rights); <u>United States v. Adams</u>, 30 Fed. App'x 604, 605-606 (7th Cir. 2002)(rejecting the defendant's guilty plea challenge for failure to warn about the possible use of sworn statements in a later prosecution, and noting previous case law finding that such errors are deemed harmless where "there is no suggestion of a current or prospective prosecution for perjury").

Defendant relies on <u>United States v. Gause</u>, a case where, despite the district court's failure to meet the perjury advisory requirement of Rule 11, the Fourth Circuit held that the defendant's substantial rights were not affected "because he agreed in his plea agreement that the Government could use any of his statements under oath against him." 170 Fed. App'x 294, 295 (4th Cir. 2006). Defendant attempts to distinguish his case from <u>Gause</u> on the ground that unlike the defendant in that case, he never entered into a plea agreement. ECF No. 60 at 10. As stated above, whether or not the perjury advisory was properly delivered by the court or reduced to writing in a plea agreement, the significance of that advisory would come into play, if at all, if the Defendant were charged with perjury in

connection with his Rule 11 hearing.  Defendant has never been charged with perjury, thus, the Court's improper perjury advisory is not material to his case.  Defendant's trial attorney's failure to object and his appellate attorney's failure to challenge the Court's Rule 11 error do not constitute ineffective assistance of counsel.

## ii. Failure to Comply with Rule 11(b)(1)(H) and (I)

Defendant claims that the Court failed to clearly advise him of his potential to receive an enhanced term of incarceration and supervised release under the Armed Career Criminal Act (ACCA).  Pursuant to Rule 11(b)(1), "the court must inform the defendant of, and determine that the defendant understands, ... (H) any maximum possible penalty, including imprisonment, fine, and term of supervised release; (I) any mandatory minimum penalty."  At the Rule 11 hearing, the Court advised Defendant that possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1)

> carries a maximum sentence of ten years imprisonment.
> If, however, you have three previous convictions for
> qualified felonies or serious drug offenses, then the
> maximum sentence is life imprisonment, and there is a
> minimum mandatory term of 15 years imprisonment.  This
> also carries the supervised release term of up to
> three years, fine up to $250,000, and I'm also
> required to impose a special assessment or one-time
> charge of $100.

ECF No. 68-1 at 4-5.

With regard to the Court's advisory on the minimum and maximum terms of incarceration, Defendant's claim is contradicted by the record of the Rule 11 hearing.  That record reflects that Defendant received an appropriate and complete advisory; he could receive up to life imprisonment, with a mandatory minimum of 15 years, depending on his criminal record. Defendant does not say how or why he was confused by the Court's advisory, and there was nothing objectively confusing about the Court's comments.  When asked if he understood what the potential penalties were for pleading guilty, Defendant replied "[y]es."  Id. at 5.

In addition, Defendant faults his attorney for failing "to have the guilty plea's conditions reduced to writing to ensure that [he] understood the consequences before pleading guilty." ECF No. 60 at 12-13.  Regardless of whether trial counsel could have reduced the terms of the guilty plea to writing, Defendant received a correct explanation of the ACCA enhancement provisions from the Court directly.  Defendant elected to proceed with a guilty plea in the face of the Court's proper advisory and has not shown that there is a reasonable probability that, had counsel reduced those same terms to writing, he would not have pled guilty and would have insisted on going to trial.

In regards to the term for supervised release, Defendant claims the Court failed to properly advise him that, if classified as an armed career criminal, he could receive a term greater than three years.  As quoted above, Defendant was advised that he could receive up to three years of supervised release, yet at sentencing, the Court imposed a supervised release term of five years.  Defendant claims that "had he known, he would be sentenced to an additional 2 year term of supervise release, he would not have pled guilty, rather insisted on going to trial."  ECF No. 60 at 15.  Relying on Bell v. United States, 521 F.2d 713 (1975), a case where the Fourth Circuit rejected a similar Rule 11 challenge, the Government asserts that the Court's error was harmless and did not affect the validity of Defendant's guilty plea.

When the defendant in Bell pled guilty, he was advised that he was facing a maximum prison sentence of 15 years but was told nothing about special parole.[4]  521 F.2d at 714.  The defendant ultimately received a sentence of six years imprisonment, with a special parole term of three years.  Id.  The Fourth Circuit found that although the district court's advisory was flawed; it was not grounds for reversal of the conviction unless the

---

[4] Special parole was a predecessor to supervised release, and like supervised release was a period of post-prison supervision that could subject a defendant to additional jail time.  Moore v. United States, 592 F.2d 753, 755 (4th Cir. 1979).

combined prison sentence and special parole term exceeded the
maximum prison sentence the defendant was told he might receive.
Id.  The Fourth Circuit concluded that when the sum of the above
referenced equation "is less than the maximum of which the
prisoner had been advised, we perceive no warrant to conclude
that he was misled."  Id. at 715.  Thus, an improper supervised
release advisory does not necessarily invalidate a guilty plea.
See United States v. Powell, 269 F.3d 175, 185 (3rd Cir. 2001)
("We conclude that an error will be regarded as harmless under
Rule 11(h) only if the government can establish that the error
is unlikely to have affected a defendant's willingness to waive
his or her rights and enter a plea of guilty.").

        In this case, Defendant was ultimately sentenced to fifteen
years imprisonment followed by five years of supervised release
for a combined total of 20 years.  As argued by the Government,
Defendant knew he was facing a life sentence and understood that
his total exposure far exceeded twenty years, yet he voluntarily
proceeded with the guilty plea.  Defendant's assertion that he
would not have pled guilty, had he known he could receive more
than three years of supervised release, is not credible under
these circumstances.  See United States v. Brown, 586 F.3d 1342,
1347 (11th Cir. 2009)("There is no evidence to support Brown's
current allegation ... that he would not have pled guilty if he
had known that the maximum supervised release term was life

instead of three years.  Accordingly, we conclude that the district court did not plainly err when it misstated Brown's maximum term of supervised release during his plea colloquy."). The Court is satisfied that Defendant would not have done anything differently had he known that he was exposing himself to five years of supervised release as opposed to three.

Defendant's challenges to the adequacy of his guilty plea premised on ineffective assistance of counsel are without merit; Defendant's trial counsel and appellate counsel were not deficient for failing to advance futile arguments, and Defendant has not demonstrated prejudice based on counsels' alleged failures.[5]

## B. Sentencing

Defendant claims the Court erred in finding that he had the requisite number of qualifying predicate convictions to qualify as an armed career criminal under the ACCA.  For sentencing purposes, when a prohibited person, e.g., a person previously

---

[5] Defendant filed a Motion to Expand the Record, ECF No. 63, to include an affidavit of appellate counsel, Julie L. B. Johnson. The Government does not oppose Defendant's request to include this affidavit as part of the record.  ECF No. 64.  Ms. Johnson submits "[h]ad I detected the issue regarding the district court's erroneous advisement regarding the maximum term of supervised release, and failure to advise of the nature of supervised release and consequences for violating supervised release, I would have included those issues in my appellate briefs filed on Mr. Bassett's behalf."  ECF No. 63-1 at 2.  The Court has taken Ms. Johnson's affidavit under advisement; however, the fact remains that such an appeal would not have prevailed, as articulated above.

convicted in any court of a crime punishable by more than one year, possesses a firearm or ammunition, the statutory punishment range is zero to ten years.  18 U.S.C. § 922(g)(1), § 924(a)(2).  Under the ACCA, however, a 15-year mandatory minimum is required if the person has three prior convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another."  18 U.S.C. § 924(e)(1). As relevant to this case, a serious drug offense is

> an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance ... for which a maximum term of imprisonment of ten years or more is prescribed by law.

18 U.S.C. § 924(e)(2)(A)(ii).  Under Maryland law, it is a crime to manufacture, distribute, possess with intent to distribute, or dispense a controlled dangerous substance.  Md. Code. Ann., Crim. Law § 5-602.  The penalty for a violation of § 5-602 depends on the substance at issue.  A violation of § 5-602 with respect to a Schedule I or Schedule II narcotic drug "is subject to a term of imprisonment not exceeding 20 years."  Id. at § 5-608(a).  Narcotic drugs include cocaine and heroin.  See Johnson v. State, 749 A.2d 769, 772 (Md. 2000); DeLeon v. State, 648 A.2d 1053, 1056 (Md. Ct. Spec. App. 1994).

Defendant claims his attorneys should have investigated and challenged the validity of his prior convictions prior to sentencing in order to challenge his status as an armed career

criminal.  ECF No. 60 at 16.  The record reflects that on April
24, 2012, trial counsel wrote to the Court, requesting
authorization to allow the United States Probation Office to
release any documents relating to the criminal history of
Defendant for review prior to sentencing.  ECF No. 44.  That
request was approved.  ECF No. 45.  Sentencing was originally
scheduled for May 10, 2012, ECF No. 40, but was delayed at the
request of counsel.  At the sentencing hearing on August 1,
2012, defense counsel informed the Court:

> We requested a postponement on the grounds that the
> Defense were investigating some of Mr. Bassett's prior
> State convictions in hopes, quite frankly, of having
> some of those convictions vacated, which could affect
> his criminal history guidelines and, most importantly
> ...  ACC status.  Your Honor, our investigation is
> somewhat complete.  Due to the age of some of Mr.
> Bassett's convictions and the fact that some of them
> were in Baltimore City District Court, a lot of
> transcripts don't exist for a lot of those plea
> colloquies, and, as such, our office doesn't have sort
> of a real good-faith basis to make a lot of coram
> nobis claims on enough of Mr. Bassett's convictions to
> have effect, but Mr. Bassett has indicated to me that
> he will be pursuing some coram nobis claims on his own
> behalf on some of these convictions.  He hasn't
> completed that process yet, and he would like to
> request additional postponement of this sentencing
> hearing until such time as he can complete his
> efforts.

ECF No. 68-2 at 2-3.  The Government opposed the request to
postpone sentencing, stating "[t]he Defendant in this case has
six ACC predicate convictions, and so, with that being the case,
he would need to be successful on four petitions in order for it

to have any impact on his sentencing." Id. at 3-4.  The Court

denied defense counsel's request to postpone.  Id. at 4.

When the Court requested to hear from defense counsel on

sentencing, counsel noted "Mr. Bassett does object to his

classification as an armed career criminal.  I don't have any

specific objections to the paragraph listed in the [presentence

report], but I did want to note the general objection." Id. at

10-11.  In sentencing Defendant, the Court referred to eight

convictions,

> including possession with intent to distribute cocaine
> in 1994; conspiracy to distribute cocaine in 1994;
> possession of heroin, 1997; distribution of cocaine in
> 1997 -- probation on that charge was revoked; also, in
> 2000, a distribution of cocaine -- the parole was
> revoked in that case; attempted CDS manufacture and
> possession of marijuana in 2002; illegal possession of
> a regulated firearm in 2005; and CDS manufacture and
> distribute in 2005.

Id. at 13.  Based on his criminal record, the Court classified

Defendant as an armed career criminal.  Id. at 13-14.  In

opposition to Defendant's § 2255 motion, the Government states

there is no question that Defendant satisfied the ACCA's

requirements, because "[o]f the [Defendant's] eight total

conviction[s], the Court listed at least five that qualified as

ACCA predicates."  ECF No. 68 at 21.  The Government's argument

is supported by Defendant's presentence report, where the

probation officer noted that Defendant pled guilty, on at least

three separate occasions, to serious drug crimes, including

distribution of cocaine in 1997, distribution of cocaine in
2000, and manufacture of heroin in 2005.  All three convictions
qualify as serious drug offenses for ACCA purposes, and were
cited by Judge Quarles in his recitation of Defendant's prior
convictions.

Defendant challenges the Court's alleged reliance on the
presentencing report, because "[t]he Government was not held
accountable to specifically verify the validity and/or veracity
of each prior as being qualifying."  ECF No. 60 at 16.  In
United States v. Redd, the defendant similarly argued that "even
if [his] prior convictions are categorically considered
predicate offenses under the ACCA, the Government failed to
carry its burden of establishing the fact of these convictions
and was not entitled to rely solely on the presentence report."
372 Fed. App'x 413, 415-416 (4th Cir. 2010).  The Fourth Circuit
rejected that argument, finding "a sentencing court is entitled
to rely on 'the conclusive significance' of the record, as set
out in the presentence report" and is not required to perform
additional fact finding.  Id. at 416 (citing Shepard v. United
States, 544 U.S. 13, 25 (2005)); see, e.g., United States v.
Terry, 916 F.2d 157, 162 (4th Cir. 1990) ("A mere objection to
the finding in the presentence report is not sufficient ...
Without any affirmative showing the information is inaccurate,
the court is free to adopt the findings of the [presentence

report] without more specific inquiry or explanation"); United
States v. Thompson, 421 F.3d 278, 285 (4th Cir. 2005) (finding
the sentencing court is "entitled to rely upon the [presentence
report] because it bears the earmarks of derivation from
Shepard-approved sources). As noted above, Defendant objected
to the findings in the presentence report at sentencing, but his
mere objections were insufficient as stated in Terry, and his §
2255 motion similarly fails to propose any basis for challenging
his prior convictions which would have altered his status for
sentencing.

Next, Defendant asserts that trial counsel could have, but
did not, move for a hearing as directed by United States v.
Fatico, 579 F.2d 707 (2d Cir. 1978), in order to determine the
validity of each prior conviction prior to sentencing.
Specifically, Defendant claims counsel should have investigated
and held a hearing to discuss his father's criminal record in
relation to Defendant's alleged prior convictions. Defendant
asserts that he and his father have the same name and that "[i]n
fact, one of the alleged prior convictions w[as] found to be
that of Bassett's father, once investigated." ECF No. 60 at 17.
Defendant has submitted the transcript from a guilty plea and
sentencing hearing held before the Honorable Audrey J.S.
Carrion, of the Circuit Court for Baltimore City, on April 10,
2000. ECF No. 69-1. Judge Carrion found that as of 2000,

Defendant had two convictions on his criminal record, his 1997
conviction for possession of heroin and his 1997 conviction for
distribution of cocaine.  Id. at 10.  Judge Carrion noted that
two 1993 convictions before the court, one for possession with
intent to distribute and the other for conspiracy, were not
Defendant's convictions.  Id.  For the purposes of Defendant's §
2255 motion, this Court will assume that the two 1994[6]
convictions cited by Judge Quarles at sentencing were wrongly
attributed to Defendant.  There is no evidence, however, that
the Court relied on those particular convictions to reach its
sentence, and nonetheless, without those convictions, Defendant
would still qualify as an armed career criminal, as discussed
above.

In sum, Defendant's ineffective assistance of counsel claim
with regards to representation at sentencing fails; he has not
put forth a credible argument that counsel could have advanced
to change his classification as an armed career criminal.

## 2. Designation as an Armed Career Criminal after Descamps

Defendant argues that he is no longer an armed career
criminal in light on the Supreme Court's decision in Descamps v.
United States, 133 S. Ct. 2276 (2013).  Specifically, Defendant
claims that "the modified categorical approach should not have

---

[6] The arrests in these cases occurred in 1993 and judgment was
entered in 1994.

17

been applied, because the Maryland[] drug statutes are
indivisible." ECF No. 69 at 21. In Descamps, the Supreme Court
clarified when and how to use the modified categorical
framework; a method for evaluating whether a prior criminal
conviction is within a particular category of convictions.[7] 133
S. Ct. at 2281. The Supreme Court held "that sentencing courts
may not apply the modified categorical approach when the crime
of which the defendant was convicted has a single, indivisible
set of elements." Id. at 2282. The Court found, however, that
if a defendant was convicted of violating a divisible statute,
the approach may be used to determine which alternative element
formed the basis of the defendant's conviction. Id. at 2293.
Defendant accuses this Court of improperly applying the modified
categorical approach in his case, but does not indicate how that
approach was used incorrectly, or point to any evidence that
that approach was used at all. The Government argues that the
modified categorical approach was not necessary here, but,
assuming it was used, such use was proper given the structure of
the Maryland narcotics and drug statutes.

As stated above, the distribution of controlled substances
is a crime under Maryland law. Md. Code. Ann., Crim. Law § 5-

---

[7] The categorical framework was first outlined by the Supreme
Court in Taylor v. United States, 495 U.S. 575, 599-600 (1990),
and later modified in Shepard v. United States, 544 U.S. 13, 26
(2005).

602.[8]  The penalty for a violation of § 5-602, however, depends
on the substance at issue; up to 20 years of imprisonment for
offenses involving narcotic drugs, id. at § 5-608(a), and up to
five years of imprisonment for drugs in general, id. at § 5-
607(a).  In United States v. Hill, 471 Fed. App'x 143, 162 (4th
Cir. 2012), the court stated that "[b]ecause the maximum penalty
for a violation of Maryland's drug distribution statute depends
on the drug distributed, the parties agree the modified
categorical approach applies to determine whether Hill's
conviction (1) involve[ed] manufacturing, distributing, or
possessing with intent to manufacture or distribute and (2) was
subject to a maximum term of imprisonment of ten years or more."
As articulated in Hill, because some drug crimes under § 5-602
are punishable by enough time to qualify under the ACCA's
definition of a serious drug offense, Maryland's drug
distribution statute is divisible in the manner contemplated by
Descamps.  Thus, use of the modified categorical approach in
this case would be proper to determine whether Defendant was an
armed career criminal, even after that decision.  In conclusion,
Defendant's claim that the Court should not have used the
modified categorical approach, "because Maryland's drug statutes
are indivisible," ECF No. 60 at 18, is incorrect.

---

[8] Previously Article 27, § 286(a)(1) of the Maryland Code.

For the above stated reasons, Defendant's motion pursuant to § 2255 will be denied.  A separate order shall issue.


_____/s/___  _____
William M. Nickerson
Senior United States District Judge


DATED: June 16, 2016